IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ELWOOD PATRICK HOPKINS, | : | No. 4:07-CV-2282 |
| Petitioner | : | |
| | : | Judge John E. Jones III |
| v. | : | |
| | : | |
| DAVID DIGUGLIELMO, *et. al*, | : | |
| Respondents | : | |

## MEMORANDUM

July 6, 2009

This matter is before the Court on the petition of Elwood Patrick Hopkins

for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth

below, the petition will be dismissed as untimely.

## I.      BACKGROUND

The factual and procedural background to this action are comprehensively

set forth in the Court's May 27, 2009 memorandum and order (Doc. 23).

Therefore, summarized below are only the procedural history and factual

background necessary to the disposition of the statute of limitations issue.

On November 14, 1990, a jury found Hopkins guilty of involuntary

manslaughter, arson endangering persons, arson endangering property, risking a

catastrophe, causing a catastrophe, and reckless burning or exploding. The

offenses arose from a fire that damaged an apartment building and an adjacent

personal care home in Mahanoy City, Pennsylvania, and which resulted in the death of one of the residents of the personal care home.  On April 26, 1993, the Schuylkill County Court of Common Pleas sentenced Hopkins to life imprisonment without the possibility of parole on the arson conviction and various concurrent sentences on the remaining convictions.

Hopkins filed a timely appeal to the Pennsylvania Superior Court, raising the following issues:  (i) weight and sufficiency of the evidence; (ii) the trial court erroneously permitted introduction of a videotape of the fire; (iii) impermissible closing argument by the prosecutor; (iv) the trial court unduly pressured the jury to reach a verdict; (v) the trial court imposed an illegal sentence; and (vi) the trial court erroneously denied his motion for a new trial based the allegation that one of the prosecution's witnesses testified falsely at trial.  By memorandum of April 15, 1994, the Superior Court affirmed Hopkins's conviction and sentence.  Hopkins did not file a petition for allowance of appeal with the Pennsylvania Supreme Court.

On January 16, 1997, Hopkins, through counsel, filed his first petition for relief under Pennsylvania's Post Conviction Relief Act ("PCRA"), arguing that Hopkins's trial counsel rendered ineffective assistance by failing to challenge Hopkins's conviction and sentence on constitutional grounds.  On December 30,

1997, the PCRA court denied Hopkins's petition. Hopkins appealed, and on July 13, 1998, the Superior Court affirmed the denial the petition on the merits. Hopkins did not seek review by the Pennsylvania Supreme Court.

On June 26, 2001, Hopkins, again through counsel, filed a second PCRA petition, arguing that the trial court's jury instructions regarding 18 Pa. C.S.A. § 3301 were unconstitutional in light of the United States Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). On March 22, 2002, the PCRA court dismissed the petition as untimely. Hopkins appealed, and on June 3, 2003, the Superior Court affirmed dismissal of Hopkins's second PCRA petition as untimely. Hopkins filed a petition for allowance of appeal with the Pennsylvania Supreme Court, which was denied by order of December 2, 2003.

On August 1, 2006, Hopkins, acting *pro se*, filed a third PCRA petition arguing (i) that his sentence was beyond the maximum allowed by statute; (ii) that the trial court erred by allowing the admission of hearsay in violation of the United States Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004); and (iii) that the findings of the fire investigation report used as evidence against him at trial were "contradictive to the law of nature, physics and human experience" and he therefore should be permitted to have an arson expert conduct further investigation. By order of December 28, 2006, the PCRA court dismissed

the petition as untimely. The Superior Court affirmed this dismissal by order of August 9, 2007. Hopkins did not appeal the denial of this third PCRA petition to the Pennsylvania Supreme Court.

On September 18, 2007, Hopkins filed his current petition for writ of habeas corpus under § 2254, raising the following grounds for relief: (i) that the mandatory sentencing provisions of the arson statute violate due process and equal protection; (ii) that his life sentence is prohibited in light of his acquittal of second degree murder; (iii) that his trial counsel was ineffective for failing to challenge the mandatory sentencing provisions of the arson statute; and (iv) that the prosecutor failed to disclose exculpatory evidence that the fire started in a way other than described by law enforcement officers at trial. By memorandum and order of May 27, 2009, the Court *sua sponte* noted that the petition appears to be untimely, but pursuant to *United States v. Bendolph*, 409 F.3d 155 (3d Cir. 2005), gave Hopkins notice of the statute of limitations problem and the opportunity to respond. Hopkins has filed additional briefs addressing the statute of limitations issue. (Docs. 24, 26.)

## II.   DISCUSSION

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), §

2254 petitions are subject to a one-year limitations period which runs from the

latest of:

> (A) the date on which the judgment became final by the conclusion of
> direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by
> State action in violation of the Constitution or laws of the United States
> is removed, if the applicant was prevented from filing by such State
> action;
>
> (C) the date on which the constitutional right asserted was initially
> recognized by the Supreme Court, if the right has been newly recognized
> by the Supreme Court and made retroactively applicable to cases on
> collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims
> presented could have been discovered through the exercise of due
> diligence.

28 U.S.C.A. § 2244(d)(1).

Usually, unless one of the exceptions in § 2244(d)(1)(B)-(D) apply,

AEDPA's statute of limitations begins to run on the date a petitioner's conviction

became final.  However, because Hopkins's conviction became final prior to the

enactment of AEDPA, he had one year from AEDPA's enactment date of April 24,

1996, that is until April 24, 1997, to file his habeas petition.  *Burns v. Morton*, 134

F.3d 109, 110 (3d Cir. 1998). Thus, absent a later start date or tolling of the statute, Hopkins's § 2254 petition, filed on September 18, 2007, is untimely.

A.    **Start Date for the Statute of Limitations**

Hopkins first argues that § 2244(d)(1)(C) provides a later starting date because he is raising a claim based on *Apprendi*. However, that section is inapplicable because "*Apprendi* does not apply retroactively to cases on collateral review" where judgment became final before *Apprendi* was decided. *United States v. Swinton*, 333 F.3d 481, 491 (3d Cir.2003); *see also Lloyd v. United States*, 407 F.3d 608, 612 n.3, 615-16 (3d Cir. 2005) (noting that "[t]he courts of appeals have unanimously held that while *Apprendi* set forth a new rule of criminal procedure, that rule is not retroactively applicable to cases on collateral review where the judgments had already become final when *Apprendi* was decided" and holding that *United States v. Booker*, 543 U.S. 220 (2005) also does not apply retroactively to cases on collateral review). Neither *Apprendi* nor *Booker* apply retroactively to the collateral review of Hopkins's conviction and sentence.

Hopkins cites to *Schriro v. Summerlin*, 542 U.S. 348 (2004) for the proposition that *Apprendi* applies retroactively on collateral review. In that case, the Supreme Court decided "whether *Ring v. Arizona*, 536 U.S. 584 (2002), applies retroactively to cases already final on direct review." *Schriro*, 542 U.S. at 349. In

*Ring*, which was decided in the wake of *Apprendi*, the Supreme Court struck down an Arizona law permitting a judge, rather than a jury, to find aggravating factors that would warrant imposition of the death penalty. *Id.* (citing *Ring*, 536 U.S. at 603-09). As an initial matter, Hopkins does not raise any argument under *Ring*. In his case, the sentencing judge did not find any facts for purposes of sentencing, but merely applied the mandatory sentencing provisions of Pennsylvania's arson statute. *See* 18 Pa. C.S.A. § 3301(b). Regardless, however, the Supreme Court in *Schriro* held that "*Ring* announced a new procedural rule that does *not* apply retroactively to cases already final on direct review," 542 U.S. at 358 (emphasis added), and thus even if Hopkins were raising a claim under *Ring*, such an argument would not provide for a later starting date for the running of the limitations period under § 2244(d)(1)(C).

Finally, even ignoring the clear precedent holding that none of *Apprendi*, *Booker*, or *Ring* apply retroactively to cases on collateral review, Hopkins's petition would still be time-barred. Even if he were correct that the Supreme Court held *Apprendi* to be retroactively applicable to cases on collateral review in its June 24, 2004 decision in *Schriro*, Hopkins would have had, at the very most, one year from that date to file his petition. He did not do so until September 18, 2007, and therefore, his petition would still be untimely.

7

Hopkins next argues for a later start date to the limitations period under §

2244(d)(1)(D), which provides that the limitations period begins to run on "the

date on which the factual predicate of the claim or claims presented could have

been discovered through the exercise of due diligence." The "factual predicate" of

a claim consists of the "vital facts" underling that claim. *McAleese v. Brennan*,

483 F.3d 206, 214 (3d Cir. 2007) (citing *Schlueter v. Varner*, 384 F.3d 69, 74 (3d

Cir. 2004), *cert. denied*, 544 U.S. 1037 (2005)). Section 2244(d)(1)(D) applies

only if such vital facts could not have been known. *Schlueter*, 384 F.3d at 74. "By

its language, the one-year period of limitation commences under section

2244(d)(1)(D) when the factual predicate of a claim could have been discovered

through the exercise of due diligence, not when it actually was discovered. Due

diligence does not require the maximum feasible diligence, but it does require

reasonable diligence in the circumstances." *Id.*

Hopkins states that he "recently obtained a copy of the Fire Investigation

Report, prepared by P.S.P. [Pennsylvania State Police] Officials" and "discovered

several paganations[sic]/maskings on the Report." (Doc. 26 at 25.) Hopkins states

that "[u]pon reviewing such information at these several paganations [sic]/

maskings, the Petitioner can see through such, when held up to the light,

exculpatory evidence that was not presented at trial or on appeal." (*Id.*) Hopkins

submitted a copy of the fire investigation report (*see* Doc. 26-2 at 18-21), and from this document it is clear that by "pagination" he means redactions, as several parts of the report appear to be blacked out.  Hopkins does not state precisely what "exculpatory evidence" he knows or believes to be redacted from the report. Instead, in support of his "newly discovered evidence" claim, he summarizes facts from trial which he believes support his theory of how the fire started and contradict the prosecution's theory.  (Doc. 26 at 20-22.)  He suggests that the unspecified "new evidence" is consistent with his theory.  (*Id.* at 21.)  Hopkins argues that the fire investigator testified falsely at his trial, that the testimony of a "snitch" was not believable, that "common sense and human decency" suggest that the fire started in some other way than that testified to by investigators, and that the investigators' conclusion is "contradictive to the law of nature, physics and human experience".  (*See* Doc. 26 at 19-22; Doc. 15 at 7.)  Hopkins requests an unredacted copy of the fire investigation report  because it "may prove to have ... exculpatory ... value[]," and requests appointment of a fire investigation expert who "may possibly arrive at a conclusion that this fire did not start the way PSP stated it did."  (Doc. 26 at 20, 22.)

Section 2244(d)(1)(D) does not apply in these circumstances.  Hopkins "has confused the facts that make up his claims with evidence that might support his

claims." *McAleese*, 483 F.3d at 214. He does not point to any "vital facts" which he could not have discovered through the exercise of due diligence, but rather seeks to conduct additional discovery and investigation to find facts that support his claims. "A desire to see more information in the hope that something will turn up differs from 'the factual predicate of a claim or claims' for purposes of § 2244(d)(1)(D)." *Id.* (quoting *Johnson v. McBride*, 381 F.3d 587, 589 (7th Cir. 2004).

Although cast, at times, as a *Brady* claim, Hopkins's claim is in realty that the evidence at trial was insufficient to sustain his conviction. Hopkins was clearly aware of all the "vital facts" underlying such a claim; they are set forth in detail in his petition. Moreover, Hopkins previously and repeatedly made these same claims before the state courts and, therefore, was fully aware of them. In his direct appeal, Hopkins challenged the weight and sufficiency of the evidence, asserting that "contradictions" and "inconsistencies" rendered the evidence presented by the prosecution unreliable and insufficient to support his conviction. (*See* Doc. 16-2 at 6-7.) In his third PCRA petition, filed on August 1, 2006, Hopkins presented almost identical arguments to those made in his current § 2254 petition. There, Hopkins argued, as he does here, that the findings of the fire investigators are "contradictive to the law of nature, physics and human experience" and that he

should be permitted to have an arson expert conduct an investigation because this expert "may reveal key-major errors in P.S.P.'s investigation, that may prove the fire was started by something other than the Petitioner." (Doc. 16-17 at 20, 24.) Thus, at the very latest, by August 1, 2006 – more than a year before filing the current petition – Hopkins had actual knowledge of the factual predicate for his claims.

Construing Hopkins's claim as a *Brady* claim does not alter this conclusion. Hopkins does not point to any exculpatory evidence which was not revealed to him, let alone vital facts which he could not have discovered through reasonable diligence. Even assuming that the redacted portions of the fire investigation report contain exculpatory evidence, Hopkins should have been aware of any problems regarding such "masked" evidence long ago. He concedes that his trial counsel had a copy of the report, *seventeen years* before he filed the current habeas petition. (Doc. 15 at 8.) The investigation into the cause of the fire was at the very heart of the case, and Hopkins should have discovered the factual predicate underlying any *Brady* claim regarding the fire investigation report long ago through the exercise of reasonable due diligence. Section 2244(d)(1)(D) does not provide a later start date for the limitations period on Hopkins's petition.

Finally, Hopkins argues that he may pursue his claims through a petition under 28 U.S.C. § 2241. As an initial matter, Hopkins expressly elected to have his current petition ruled on as a petition filed under 28 U.S.C. § 2254. (Doc. 4.) Moreover, a petitioner cannot circumvent the one-year statute of limitations for a § 2255 motion by proceeding under § 2241. A state prisoner challenging the fact or duration of his incarceration pursuant to a state conviction must use § 2254. *See Coady v. Vaughn*, 251 F.3d 480, 484-85 (3d Cir. 2001). A petitioner may not resort to § 2241 unless a § 2254 petition would be "inadequate or ineffective," that is "where the petitioner demonstrates that some limitation of scope or procedure would prevent a § [2254] proceeding from affording him a full hearing and adjudication of his wrongful detention claim." *Cradle v. U.S. ex rel. Miner*, 290 F.3d 536, 538 (3d Cir. 2002). A § 2254 motion "is not inadequate or ineffective merely because ... the one-year statute of limitations has expired," *id.* at 539, and a petitioner may not resort to § 2241 to circumvent the restrictions on a § 2254 petition, *Coady*, 251 F.3d at 484-85. Hopkins has presented no reason why a § 2254 petition is inadequate or ineffective, other than the running of the statute of limitations, and therefore, may not proceed under § 2241.

Hopkins has presented no grounds for the statute of limitations to run from any point other than the date on which his conviction became final under §

2244(d)(1)(A).  Therefore, absent tolling of the statute, his petition is time-barred.

## B.    Equitable Tolling

Hopkins argues that he is entitled to equitable tolling of the statute of limitations.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements:  (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).[1]  "Mere excusable neglect is not sufficient."  *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) (quoting *Miller*, 145 F.3d at 618-19).  "[E]quitable tolling is proper only when the principles of equity would make the rigid application of a limitation period unfair."  *Id.* (quoting *Miller*, 145 F.3d at 618).  The Third Circuit has explained that "that equitable tolling may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum."  *Id.* (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).  "In the final analysis, however, 'a statute of limitations should be tolled only in the rare

---

[1] The Supreme Court has not decided whether equitable tolling is applicable to AEDPA's statute of limitations, but has so assumed without deciding.  *Pace*, 544 U.S. at 418 n.18.  The Third Circuit has held that equitable tolling does apply to AEDPA's one-year filing requirement. *Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 617 (3d Cir.1998).

situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'" *Id.*

Hopkins argues that he is entitled to equitable tolling because after *Apprendi* was decided, he relied on his former attorney's decision to file a second PCRA petition on June 26, 2001, raising an *Apprendi* claim, and to pursue appeals of the denial of that petition. Hopkins states that his attorney then promised to file a federal habeas petition on his behalf, but that by April 2006, he learned that his attorney would not do so. These facts cannot give rise to equitable tolling, however, because the limitations period on Hopkins's petition had already run by the time these events occurred. *See Schlueter* 384 F.3d at 79; *see also, e.g.*, *Washington v. Vaughn*, C.A. No. 01-1045, 2002 WL 1200410, at *4 (E.D. Pa. June 3, 2002) (rejecting petitioner's claim of equitable tolling based on prison's seizure of computer disks containing his legal files because the seizure occurred after the limitations period had run).

As noted above, Hopkins had one year from AEDPA's enactment, that is until April 24, 1997, to file his habeas petition. Under 28 U.S.C.A. § 2244(d)(2), the statute of limitations for Hopkins's petition was tolled from the filing of his first PCRA petition from April 24, 1997 until its denial became final on August 12, 1998. Hopkins, therefore, had one year from the latter date, or until August 12,

1999, to file his § 2254 petition.[2]  The limitations period had thus already run by the time the events occurred which Hopkins relies on to invoke equitable tolling.

Hopkins's allegations also do not warrant equitable tolling because both the Supreme Court and the Third Circuit have made clear that mere attorney error is not a sufficient ground to invoke equitable tolling.  *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 337-38 (2007) ("Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the post-conviction context where prisoners have no constitutional right to counsel."); *Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir.) *cert. denied sub nom. Horn v. Fahy*, 534 U.S. 944 (2001) ("In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling.").  Counsel's choice to pursue a state-court post-conviction relief before filing a federal petition or his (in fact, correct) advice to Hopkins that a federal petition would be barred by AEDPA's statute of limitations do not warrant equitable tolling.  *See Brown v. Shannon*, 322 F.3d 768, 774 (3d Cir. 2003)

---

[2] As noted in the May 27, 2009 opinion, Hopkins's second and third PCRA petitions, filed on June 26, 2001 and August 1, 2006 respectively, did not toll the limitations period because they were filed after it had already run, *see Long v. Wilson*, 393 F.3d 390, 394-95 (3d Cir. 2004); *Schlueter* 384 F.3d at 78-79, and because they were found untimely by the state courts and therefore not "properly filed" for purposes of § 2244(d)(2), *Pace*, 544 U.S. at 417.

(holding attorney's failure to file an appeal from the denial of a PCRA petition and to file a federal habeas petition does not justify equitable tolling).

The Third Circuit has also held, however, that there are "narrow circumstances in which misbehavior of an attorney may merit such equitable relief." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999). Potentially helpful to Hopkins is *Nara v. Frank*, 264 F.3d 310, 320 (3d Cir. 2001), in which the Third Circuit held that an evidentiary hearing was warranted with respect to the petitioner's equitable tolling claims where his attorney effectively abandoned him and prevented him from filing the habeas petition on time by failing to inform him when the Pennsylvania Supreme Court denied review of his motion to withdraw his guilty plea; refusing to remove herself as appointed counsel after the Pennsylvania Supreme Court decision, thus preventing him from moving his case forward; leading him to believe that she was going to file the federal habeas petition on his behalf; and telling him that there were no time constraints for filing a petition.

Hopkins's claims, however, while in some respects loosely analogous to those in *Nara*, do not involve the same "extraordinary" circumstances or combination of attorney errors presented in that case. From the correspondence between Hopkins and his attorney appended to his brief in support of the petition,

it appears that it was counsel who actually approached Hopkins about making a claim under *Apprendi* and offered to do so without charge to Hopkins. (Doc. 26-2 at 1.) Hopkins's attorney then filed a second PCRA petition on his behalf raising the *Apprendi* claims, kept Hopkins apprised of other cases addressing the *Apprendi* issue, and promptly informed him of the decisions on his second PCRA petition. (*See* Doc. 26-2 at 2-5.) Far from preventing Hopkins from "moving his case forward, counsel pursued Hopkins's second PCRA petition through to the Pennsylvania Supreme Court. Hopkins appears to have been well aware of what was happening with his case, and was pleased with his attorney's efforts, stating "I hope you know how deep my appreciation goes. Words can never express my thanks." (*Id.* at 5.) When the petition for allowance of appeal regarding Hopkins's second PCRA petition was denied, his attorney raised the possibility of proceeding with a federal habeas petition. (*Id.* at 6.) Hopkins's counsel, however, correctly concluded that such a petition would be barred by AEDPA's statute of limitations unless *Apprendi* was made retroactively applicable to cases on collateral review, and he stressed to Hopkins that he had "no confidence" a federal petition would prevail. (*Id.* at 6-7.) Nonetheless, counsel offered to file a federal petition (*id.* at 7), and Hopkins took him up on this offer (*id.* at 8). In April 2004, Hopkins's attorney advised him that he hoped to have the petition ready in the next 30 days,

but again stressed that the petition might be found to be untimely. (*Id.* at 11.) Perhaps because of the timeliness issue or because of Hopkins's inability to pay for representation (*see id.* at 8-9, 11) – the reasons are not apparent from the record – Hopkins's attorney did not prepare a federal petition for him, and by April 2007, had turned the case file over to Hopkins. (*Id.* at 16.)

Although it would appear that Hopkins relied on his attorney's offer to prepare a federal habeas petition, this fact is not an "extraordinary circumstance" warranting equitable tolling. First, it was the law, not the attorney's failure to prepare a petition, that stood in the way of Hopkins's success. Hopkins's petition would have been time-barred if it had been filed in May 2004, and Hopkins is in the same position now as he would have been had his attorney filed the petition as he promised. Any error by Hopkins's attorney caused no harm to his claims. Furthermore, unlike cases such as *Seitzinger*, 165 F.3d at 241-42, where an attorney "affirmatively lied" to his client, leading her to believe a petition had been filed, Hopkins's attorney was forthright about the low probability of success of a federal petition, unless and until *Apprendi* was found to be applied retroactively, and after deciding, for unknown reasons, not to file a petition, promptly turned the file over to Hopkins. *Cf. Brown*, 322 F.3d at 773-74 (rejecting petitioner's claim that equitable tolling was warranted on grounds that his attorney "abandoned" him

by withdrawing representation without filing a federal habeas petition *inter alia* because attorney informed petitioner of his lack of progress on the petition and was candid about withdrawing). The record here does not reveal any attorney misconduct that rises to the level of an "extraordinary" circumstance warranting equitable tolling.

Even if such an extraordinary circumstance were presented, equitable tolling would not be appropriate here because Hopkins failed to exercise reasonable diligence in filing his petition. Hopkins states that he was aware in April 2006 that his former attorney was not going to file a federal petition on his behalf. (Doc. 26 at 10.) Yet Hopkins waited until September 2007, almost a year-and-a-half later, before filing his petition. *See, e.g.*, *Saleem v. Hendricks*, 306 Fed. Appx. 739, 741 (3d Cir. 2009) (holding petitioner did not act diligently in waiting 20 months to bring a state-court petition after his federal petition was dismissed without prejudice for failure to exhaust state remedies). Moreover, in considering Hopkins's diligence, the argument that he relied on his attorney's promise to file a petition making an *Apprendi* argument is largely a red herring. The grounds for relief raised in his petition – that the sentencing provision of the Pennsylvania arson statute is unconstitutional on its face and as applied in his case, that his trial counsel was ineffective for failing to raise that claim, that the evidence at trial was

insufficient, and that the prosecutor withheld exculpatory evidence – are based, if at all, only tangentially on *Apprendi*. (*See, e.g.*, Doc. 26 at 23 where Hopkins argues that "prior to the holding of *Apprendi*, Pa. Arson Statute was in conflict with clearly established Federal Law"). Hopkins was, or should have been, aware of these claims long ago and, in fact, with the exception of his purported *Brady* claim, raised them in his direct appeal and first PCRA petition. The denial of Hopkins's first PCRA petition became final on August 12, 1998, but Hopkins waited over nine years to file a federal habeas petition raising essentially the same issues. Under these circumstances, the Court cannot conclude that Hopkins was pursuing his rights diligently as required to trigger equitable tolling.

Hopkins also argues that his trial and appellate counsel's ineffectiveness in failing to raise his claims for relief before the state courts constitutes "cause and prejudice" for his lack of diligence. The Court construes this argument as a further asserted ground for equitable tolling, but finds that it too fails. As an initial matter, Hopkins's appellate and post-conviction counsel did, in fact, raise on appeal and in his first PCRA petition essentially the same arguments he makes in his § 2254 petition: that his sentence and the Pennsylvania arson statute are unconstitutional and that the evidence was insufficient to convict. Moreover, as with Hopkins's claim of error by his post-conviction counsel in not filing a federal petition, any

purported ineffectiveness by his trial or appellate counsel in failing to raise the new or different arguments, if any, that Hopkins now asserts does not constitute an extraordinary circumstance warranting equitable tolling.  Nor do such errors, allegedly made more than a decade ago, justify Hopkins's lack of diligence in waiting so long after the purported ineffectiveness to raise the issues in a federal habeas petition.

Finally, Hopkins argues that his conviction and sentence are a "miscarriage of justice."  (Doc. 26 at 12-13.)  In light of the substance of Hopkins's claims and his citation to *Schlup v. Delo*, 513 U.S. 298 (1995), the Court will construe this assertion as an argument for equitable tolling based on a claim of actual innocence. The Third Circuit has yet to decide whether a claim of actual innocence  can equitably toll the AEDPA statute of limitations.  *See McKeever v. Warden SCI-Graterford*, 486 F.3d 81, 84 n. 5 (3d Cir. 2007).  The decisions of other courts of appeals on this issue are not uniform.  *See Horning v. Lavan*, 197 Fed. Appx. 90, 92-93 (3d Cir. 2006); *Knecht v. Shannon*, 132 Fed. Appx. 407, 409 n.2 (3d Cir. 2005).  Even assuming that the AEDPA statute of limitations may be equitably tolled on the basis of an actual innocence claim, however, Hopkins's claim would fail.

"To establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Schlup*, 513 U.S. at 327-328). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner must show "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623. This standard "is demanding and permits review only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006) (quoting *Schlup*, 513 U.S. at 327). "[C]laims of actual innocence are rarely successful," and "in virtually every case, the allegation of actual innocence has been summarily rejected." *Schlup*, 513 U.S. at 324 (citation omitted). In this case, Hopkins does not identify any "new reliable evidence" demonstrating his factual innocence. He supports his actual innocence claim only by pointing to the redacted portions of the fire investigation report and arguing that the prosecution's evidence and witnesses were "contradictive to the laws of nature, physics and human experience." In fact, at base, Hopkins's claim is not that new evidence proves he is innocent, but that the prosecution's theory of how the fire started was wrong and that he should be

allowed to search for evidence to prove this contention. This does not meet the "demanding" standard for a claim of actual innocence, and presents no extraordinary circumstance to disregard the limitations period.

Further, assuming that an actual innocence claim may toll the AEDPA statute of limitations, and assuming that Hopkins presented a viable actual innocence claim, his petition would still be time-barred. A petitioner seeking equitable tolling through an actual innocence claim must still prove that he exercised reasonable diligence in bringing his claim. *Horning*, 197 Fed. Appx. at 93-94. As discussed above, Hopkins has not demonstrated such reasonable diligence. He offers no explanation for why he waited more than 18 months to file his petition after learning that former counsel would not draft an *Apprendi* claim on his behalf, nor does he explain why he waited more than 9 years after the denial of his first PCRA petition to assert his other claims. Hopkins has presented no grounds warranting equitable tolling.

### C. Prejudice

For the foregoing reasons, the Court finds that Hopkins's petition is untimely and is not saved by statutory or equitable tolling. However, because the issue of timeliness was raised *sua sponte* and after the petition had passed the Rule

4 stage, the Court must consider the prejudice to Hopkins. *Bendolph*, 409 F.3d at 168.

The Court first looks to how late in the case the limitations issue was raised. *Id.* at 169. The Court *sua sponte* raised the timeliness of Hopkins's petition in its May 27, 2009 memorandum and order, one year and eight months after Hopkins filed his petition. This delay is less than the nearly two years found not to constitute prejudice in *Bendolph*, and during this time, Hopkins suffered no diminution in his ability to present his case. In fact, some of the delay was occasioned by the Court going to some length to ensure that Hopkins was provided with all at-issue materials and given opportunities for additional and supplemental briefing. (*See* Docs. 17, 19, 25.)

Next, the Court must look to whether the petitioner had sufficient opportunity to respond to the statute of limitations issue once raised. *Bendolph*, 409 F.3d at 169. Here, Hopkins was granted 30 days in which to file a supplemental brief addressing the issue. (Doc. 23.) He filed such a brief. (Doc. 24.) When it was determined that Hopkins was referring to another brief that he mistakenly thought had been filed, he was given an additional 15 days to file that brief or reiterate the arguments he thought he had already made. (Doc. 25.)

Hopkins filed another copy of the brief.  (Doc. 26.)  Thus, no problem is presented regarding Hopkins's opportunity to address the statute of limitations issue.

Finally, the Court must consider whether the government acted in bad faith. *Bendolph*, 409 F.3d at 169.  Although some of the delay in this case was occasioned by the government's initially incomplete response to the petition and late supplemental response, such inadvertence does not equal bad faith, *id.* (quoting *Long*, 393 F.3d at 401), and this neglect did not harm Hopkins's chances of success.

In sum, the Court finds no prejudice to Hopkins from its *sua sponte* raising the statute of limitations and that Hopkins had sufficient notice and opportunity to respond to the issue.

## III.   CONCLUSION

For the foregoing reasons, Hopkins's petition will be dismissed with prejudice as untimely.

When a district court issues a final order denying a § 2254 application, the court must also decide whether to issue a certificate of appealability ("COA"). 3d Cir. R. 22.2.  A certificate of appealability is appropriate "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When the district court denies a habeas petition on procedural grounds

without reaching the underlying constitutional claim, a COA should issue only if the petitioner shows that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and whether the district court was correct in its procedural ruling. *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* at 484.

Reasonable jurists would not find debatable the conclusion that Hopkins's petition is time-barred. Therefore, the Court declines to issue a certificate of appealability.

An appropriate final order will be entered.